## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

**CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. AMR-63188-02, LEXINGTON INSURANCE COMPANY, GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA, INDIAN HARBOR INSURANCE COMPANY, HDI GLOBAL SPECIALTY SE, OLD REPUBLIC UNION INSURANCE COMPANY, QBE SPECIALTY INSURANCE COMPANY, STEADFAST INSURANCE COMPANY, UNITED SPECIALTY INSURANCE COMPANY, AND SAFETY SPECIALTY INSURANCE COMPANY**

**VERSUS**

**BUFKIN ENTERPRISES, LLC**

**CIVIL ACTION NO.**

**JUDGE**

**MAGISTRATE JUDGE**

_____ /

## PETITION TO COMPEL ARBITRATION AND STAY LITIGATION WITH INCORPORATED SUPPORTING MEMORANDUM OF LAW

Pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") and the Federal Arbitration Act (the "FAA"), Petitioners Certain Underwriters at Lloyd's, London subscribing to Policy No. AMR-63188-02 ("Underwriters"), Lexington Insurance Company, General Security Indemnity Company of Arizona, Indian Harbor Insurance Company, HDI Global Specialty SE, Old Republic Union Insurance Company, QBE Specialty Insurance Company, Steadfast Insurance Company, United Specialty Insurance Company, and Safety Specialty Insurance

Company (collectively hereinafter "Insurers" or "Petitioners") file this Petition to Compel Arbitration against their insured, Respondent Bufkin Enterprises LLC ("Insured" or "Respondent" or "Bufkin") and ask the Court to Compel Respondent's participation in the arbitration process demanded pursuant to the binding Arbitration Agreement to which the Insurers and the Insured are parties and to stay litigation pending arbitration.

## PRELIMINARY STATEMENT

1. This is a dispute over a Hurricane Laura-related commercial property insurance claim arising under a surplus lines insurance policy issued to Bufkin and severally subscribed to by the Insurers (the "Policy"). As detailed below, Bufkin has sued a subset of the Insurers, alleging causes of action for breach of the Policy and statutory bad faith in connection with the adjustment of the Bufkin's claim. The Policy, however, includes a broad arbitration agreement which mandates that "[a]ll matters in difference" between the Insured and the Insurers "in relationship to this insurance" be submitted to arbitration. The Insured has rejected the Insurers' demand for arbitration, thereby necessitating the filing of this Petition.

2. Pursuant to 9 U.S.C.§202, the arbitration agreement falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), 21 U.S.T. 2517, T.I.A.S. No. 6996, 30 U.N.T.S. 3, reprinted following 9 U.S.C.A. § 201, because it arises out a commercial relationship and it is not entirely between citizens of the United States.

3.  Pursuant to 9 U.S.C. §§201, 206,the Insurers seek an order from the Court requiring Bufkin to submit to the arbitration process as provided for in the arbitration agreement.

4.  Alternatively, the arbitration agreement is enforceable under the Federal Arbitration Act ("FAA"), and pursuant to 9 U.S.C. §4, the Insurers seek an order directing Bufkin to  submit all claims against the Insurers to the arbitration process as provided for in the Arbitration Agreement.

5.  In addition, pursuant to 9 U.S.C. §3, the Insurers seek an order to stay this litigation and the "Insured's Lawsuit" (defined below) pending the conclusion of the arbitration process.

## THE PARTIES

6.  Underwriters include individual and corporate members of various syndicates at Lloyd's London, who/which conduct business in London, England, and who/which subscribed their respective percentage shares of the Policy, at least one of whom/which is not a citizen of the United States and at least one of which is organized under the laws of England and Wales and has her/its principal place of business in England or otherwise are citizens of the United Kingdom or other non-U.S. signatories to the Convention.

7.  More specifically, Underwriters are partially comprised of the following[1]:

---

[1] The below listing is an incomplete list of the Underwriters participating on the risk. The list is not intended to be exhaustive but merely to show the extent to which entities that are citizens of countries other than the United States. It is believed the remainder of the Names or members comprising the market subscribing to Policy No. AMR-63188-02 are primarily comprised of citizens of Contracting States other than the United States.

o   Syndicate 2987 is an unincorporated association, the managing agent of which is Brit Syndicates Limited and sole corporate member of which is Brit UW Limited, registered in England and Wales, with its principal place of business in London, England;

o   Syndicate 2003 is an unincorporated association, the managing agent of which is Catlin Underwriters Agencies Limited and the sole corporate member is Catlin Syndicate Limited, which is registered in England, with its principal place of business in London, England; and

o   Syndicate 510 is an unincorporated association, the managing agent of which is Tokio Marine Kiln Syndicates Limited and the majority corporate member is Tokio Marine Kiln Group Limited, registered in England and Wales and has its principal place of business in London, England.

8.   HDI Global Specialty SE ("HDI") is registered under the laws of Germany, with its principal place of business in Germany.

9.   Indian Harbor Insurance Company is a North Dakota corporation and has its principal place of business in Connecticut.

10.  QBE Specialty Insurance Company is a North Dakota corporation and has its principal place of business in New York.

11.  Steadfast Insurance Company is a citizen of Delaware and Illinois.

12.  General Security Indemnity Company of Arizona is an Arizona corporation with its principal place of business in New York.

PD.35720593.1

13. United Specialty Insurance Company is a Delaware corporation with its principal place of business in Texas.

14. Lexington Insurance Company is a Delaware corporation with its principal place of business in Massachusetts.

15. Safety Specialty Insurance Company is a Missouri insurance company with its principal place of business in Missouri.

16. Old Republic Union Insurance Company is Illinois insurance company with its principal place of business in Illinois.

17. Respondent Bufkin Enterprises LLC is a Louisiana Limited Liability Corporation with its principal place of business in Lake Charles, Louisiana.   Bufkin Enterprises LLC is comprised of one member, Tara Bufkin, who is domiciled in Lake Charles, Louisiana and is a citizen of Louisiana.  Bufkin Enterprises LLC is also, therefore, a citizen of Louisiana.  Bufkin Enterprises LLC's registered agent for service of process is Tara Bufkin, 3102 Henderson Bayou Rd., Lake Charles, Louisiana 70605.

18. The United States, United Kingdom, and Germany are signatories to the Convention.

## **JURISDICTION AND VENUE**

19. The Insurers assert that there is a valid Arbitration Agreement between the parties that falls under the Convention and thus this Court has original jurisdiction pursuant to 9 U.S.C. §203 and 28 U.S.C. §1331.

20. Venue is proper in this Court pursuant to 9 U.S.C. §204 because save for the Arbitration Agreement, an action or proceeding with respect to this controversy between the parties could have been brought in this Court.  More specifically, venue would be proper in this Court (i) under 28 U.S.C. §1391(b)(2) because a substantial part of the events which form the basis of this action occurred in this District and the property that is the subject of this action is situated in this District, and (ii) under 28 U.S.C. §1391(b)(1)because the Respondent is a resident of this District.

## FACTUAL BACKGROUND

21. This matter involves a dispute over a Hurricane Laura-related property insurance claim involving damage (the "Loss") to insured property owned by Bufkin, which insured property consists of 20 buildings at 13 locations in Lake Charles, Louisiana at the following addresses in Lake Charles, Louisiana: 612 Cusic St., 613 Cusic St., 615 Cusic St., 617 Cusic St., 618 Cusic St., 619 Cusic St., 4308 Auburn St., 4312 Auburn St., 4316 Auburn St., 4324 Auburn St., 4328 Auburn St., 4340 Auburn St., Buildings A, B, C, D, E,F,G and H (the "Subject Properties").  The Subject Properties are the location of the University Square Apartments.

22. At the time of the Loss, which occurred on or about August 27, 2020, the Subject Properties were insured under a surplus lines commercial property insurance policy (the "Policy") issued to Bufkin for the policy period May 15, 2020 through

May 15, 2021, which allocated premiums and proportionate liabilities among the ten Insurers. *See* Ex. "A" Certified Copy of Policy.

23. The Policy was printed and published in Houston, Texas by AmRisc, LLC, the Managing General Agency for the Insurers, and from Texas, AmRisc LLC delivered the Policy via email to the Insured's surplus lines insurance broker, AmWINS Brokerage of Florida, Inc. in Florida.

24. Following Hurricane Laura, Bufkin reported the Loss to the Insurers.

25. The Insurers appointed Sedgwick-Delegated Authority as their party claims administrator.

26. To date, the Insurers issued a number of payments to Bufkin including (i) a payment in the amount of $100,000 issued on September 14, 2020; (ii) a payment in the amount of $839,949.01 issued on February 10, 2021; (iii) a payment in the amount of $65,289.00 issued on June 2, 2021; (iv) a payment in the amount of $129,318.00 issued on June 14, 2021; (v) a payment in the amount of $10,000.00 issued on August 5, 2021, and (vi) a payment in the amount of $877,273.84 issued on August 5, 2021.

27. By letter dated September 23, 2021, from Insured's counsel (Henry John Roth, Esq.) to Michael Littlejohn of Sedgwick Delegated Authority, the Insured submitted a Proof of Loss addressed to all of the Insurers demanding an additional payment "for the undisputed amount of $3,328,990.10, to be received within the statutory deadline of October 23, 2021." *See* Ex. "B," September 23, 2021 Letter from H. Roth to M. Littlejohn (without enclosures). (In the letter, counsel for the

Insured advised that "[t]he amount of $3,348,990.10 owed is non-inclusive of bad faith penalties or attorney's fees—this amount only includes direct loss as a result of Hurricane Laura.")  *Id*.

28. The Insurers disagree that the Insured is entitled to an additional payment in the amount of $3,328,990.10 as demanded by the Insured, and the Insurers further disagree that the Insured is entitled to any additional payment for "bad faith penalties or attorney's fees. In the Insured's September 23, 2021 demand letter, counsel for the Insured further asserted that the Insurers unreasonably delayed and underpaid the Insured for the Loss, which the Insurers also dispute.  *See* Ex. "B."

29. The Policy includes an Arbitration Agreement to which the Insurers and Bufkin are all parties.  The Arbitration Agreement states as follows:

### SECTION VII – CONDITIONS

C.    ARBITRATION CLAUSE:   All matters in difference between the Insured and the Companies (hereinafter referred to as "the parties") in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.

Unless the parties agree upon a single Arbitrator within thirty days of one receiving a written request from the other for Arbitration, the Claimant (the party requesting Arbitration) shall appoint his Arbitrator and give written notice thereof to the Respondent.  Within thirty days of receiving such notice, the Respondent shall appoint his Arbitrator and give written notice thereof to the Claimant, failing which the Claimant may nominate an Arbitrator on behalf of the Respondent.

Should the Arbitrators fail to agree, they shall appoint, by mutual agreement only, an Umpire to whom the matter in difference shall be referred.  If the Arbitrators cannot agree to an Umpire, either may request the selection be made by a judge of a New York court.

Unless the parties otherwise agree, the Arbitration Tribunal shall consist of persons employed or engaged in a senior position in Insurance underwriting or claims.

The Arbitration Tribunal shall have power to fix all procedural rules for the holding of the Arbitration including discretionary power to make orders as to any matters which it may consider proper in the circumstances of the case with regard to pleadings, discovery, inspection of documents, examination of witnesses and any other matter whatsoever relating to the conduct of the Arbitration and may receive and act upon such evidence whether oral or written strictly admissible or not as it shall in its discretion think fit.

Each party will pay its chosen Arbitrator, and also bear the other expenses of the Arbitration and Umpire equally.

The seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance.

The Arbitration Tribunal may not award exemplary, punitive, multiple, consequential or other damages of a similar nature.

A decision agreed to by any two members of the Arbitration Tribunal shall be binding.  The award of the Arbitration Tribunal shall be in writing and binding upon the parties who covenant to carry out the same.  If either of the parties should fail to carry out any award the other may apply for its enforcement to a court of competent jurisdiction in any territory in which the party in default is domiciled or has assets or carries on business.

*See* Ex. A, (Form AR COMPASS 04 18, page 24 of 42).

30. The Policy further specifies that "[t]he amount of loss for which the Companies may be liable shall be payable within thirty (30) days after Proof of Loss, as herein after required, is received and accepted by the Companies <u>and ascertainment of the amount of loss</u> is made either by agreement between the First Named Insured and the Companies or an amount <u>is determined by binding Arbitration in accordance with the provisions of this Policy</u>." *See* Ex. A, (Form AR COMPASS, page 30 of 42) (emphasis added).

31. In direct violation of the Arbitration Agreement, (and in a transparent, but ultimately futile effort to avoid enforcement of the Arbitration Agreement and the application of the Convention), on or about October 11, 2021, Bufkin filed suit (hereinafter the "Insured's Lawsuit") in the Fourteenth Judicial District Court, Calcasieu Parish, State of Louisiana against a subset of the Insurers that subscribe the risk (namely, Indian Harbor Insurance Company, QBE Specialty Insurance Company, Steadfast Insurance Company, General Security Indemnity Company of Arizona, United Specialty Insurance Company, Lexington Insurance Company, Safety Specialty Insurance Company, and Old Republic Union Insurance Company—collectively referred to as the "Domestic Insurers"). ) A copy of the Petition for Declaratory Judgment and Damages filed in the Insured's Lawsuit is attached hereto as Exhibit "C.")

32. In the Insured's Lawsuit, Bufkin alleges damage to the Subject Properties arising out of Hurricane Laura as well as business interruption loss, additional living expenses and/or loss of use, for which it seeks to recover benefits under the Policy

beyond those agreed and paid by the Insurers.  In the Insured's Lawsuit, the Insured seeks to recover under both the Policy, as well as pursuant to various Louisiana statutes, and the Insured also seeks certain declaratory relief.  *See generally*, Exhibit "C."

33. In the Insured's Lawsuit, Bufkin asserted causes of action for "Declaratory Judgment: Timeline Violation of La. Stat. Ann. §22:1892 and §22:1973" [*Id*. at Par. 43-44]; "Breach of Contract" [*Id*. at Par. 45-47] and "Breach of Duty of Good Faith and Fair Dealing" [*Id*. at Par. 48-49].

34. In response to the Insured's letter of September 23, 2021 and in response to the Insured's Lawsuit, by letter to the Insured's counsel dated October 21, 2021, the Insurers invoked the Arbitration Agreement and demanded that Bufkin arbitrate all issues in dispute between Bufkin and the Insurers with respect to the Loss, including the claims asserted in the Insured's Lawsuit.  *See* Ex. D, Arbitration Demand Letter.  Along with the October 21, 2021 Arbitration Demand Letter, the Insurers enclosed a check for an additional undisputed payment in the amount of $147,001.00, and advised Bufkin that "there is remaining recoverable depreciation totaling $102,762.00."

35. Bufkin (through counsel) responded to the Arbitration Demand Letter via letter dated November 17, 2021, whereby Bufkin advised that "we will oppose any motions to compel arbitration."  *See* Ex. "E," November 17, 2021 Letter.

**MEMORANDUM OF LAW**

**The Arbitration Agreement Must Be Enforced Under the Convention.**

36. The Convention is an international treaty that guarantees citizens of signatory countries the right to enforce agreements to arbitrate disputes. As the Supreme Court has explained, "[t]he goal of the convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements and international contracts and to unify the standard by which the agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n. 15 (1974). Over one hundred countries have signed the Convention, including the United States, Germany, and the United Kingdom of Great Britain and Northern Ireland.[2]

37. The United Kingdom of Great Britain and Northern Ireland (of which England and Wales are a part) has been a Contracting State since 1975 and Germany since 1961.[3] The United States became a Contracting State in 1970, Congress enacted Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201-208, ("the "Convention Act") "to establish procedures for our courts to implement the Convention." *McDermott Int'l, Inc. v. Lloyd's Underwriters of London*, 944 F.2d 1199, 1208 (5th Cir. 1991). The Convention Act is part of the broader Arbitration Act, 9 U.S.C. § 1 *et seq.* Chapter 1 of Title 9 is the Federal Arbitration Act ("FAA").

---

[2] See www.newyorkconvention1958.org.
[3] *Id.*

Chapter 2 of Title 9 is the Convention Act.  Section 208 of the Convention Act incorporates the FAA into the Convention Act to the extent the FAA is not inconsistent with the Convention Act or the Convention. *See* 9 U.S.C. § 208.

38. As a general principle, the FAA applies to all arbitration agreements involving interstate commerce.  The United States Supreme Court has expressed a strong presumption favoring the enforcement of arbitration provisions whenever possible. "Section 2 [of the Arbitration Act] is a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp*., 103 S.Ct. 927, 941 (1983). Further, as the Supreme Court noted, "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration ..." *Id.* at 941 (emphasis added).

39. The strong policy in favor of arbitration "applies with special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 631, (1985). In that case, the Court "conclude[d] that concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' agreement, even assuming that a contrary result would be forthcoming in a domestic context." *Id.*

40. Section 201 of Title 9 to the United States Code provides that "[t]he Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10,

1958, shall be enforced in United States Courts in accordance with this chapter."

9 U.S.C. § 201. The Convention provides in pertinent part:

> The court of a Contracting State, when seized of an action in a matter in respect to which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

> *See* Convention, art. 2, ¶ 3, reprinted at 9 U.S.C. § 201 note, at 511.

Under these provisions, the Court's inquiry is limited to determining whether (1) an arbitration agreement exists which falls within the scope of the Convention's reach, and (2) the agreement is null and void, inoperative, or incapable of being performed. *See Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co*., 767 F.2d 1140 (5th Cir.1985); *Beiser v. Weyler*, 284 F.3d 665 (5th Cir. 2002).

41. Section 202 of the Convention Act provides the basis for determining whether an arbitration agreement falls within the Convention's reach, which states:

> An arbitration agreement or arbitral award *arising out of a legal relationship*, whether contractual or not, *which is considered as commercial*, including a transaction, contract, or *agreement described in section 2 of this title*, falls under the Convention.  An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states.  For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

> 9 U.S.C. §202 (emphasis added).

42. Article II of the Convention further clarifies which arbitration agreements are subject to the Convention.  Article II states, in pertinent part, as follows:

> 1.  *Each Contracting State* shall recognize an *agreement in writing* under which the parties undertake to submit to arbitration *all or any differences* which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.
>
> 2.  The term "agreement in writing" shall include an *arbitral clause in a contract* or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams.
>
> The Convention, Article II (emphasis added).

43. Here, the Arbitration Agreement, an agreement in writing to arbitrate the dispute, dictates the arbitration shall be held in New York and shall be subject to New York law.  As well, the dispute clearly arises out of a commercial legal relationship.  *See Glad Tidings Assembly of God Church of Lake Charles v. Indian Harbor Ins. Co.*, 2021 U.S. Dist. LEXIS 121625, *6 (W.D. La. June 28, 2021) (J. Cain) (finding that "an insurance policy" qualifies as an agreement that arises out of a commercial legal relationship), citing *Port Cargo Svc., LLC v. Certain Underwriters at Lloyd's, London*, 2018 U.S. Dist. LEXIS 144291, 2018 WL 4042874, at *6 (E.D. La. Aug. 24, 2018) and *Georgetown Home Owners Ass'n, Inc. v. Certain Underwriters at Lloyd's London*, 2021 U.S. Dist. LEXIS 20042, 2021 WL 359735, at *3 (M.D. La. Feb. 2, 2021).

44. In addition, the Arbitration Agreement is "not entirely between citizens of the United States."  Here, the Arbitration Agreement states that "the parties" to the

arbitration agreement are "the Insured and the Companies[.]"  The "Companies" refers to the all of the insurers and underwriters that subscribe to the risk (i.e., the Insurers).[4]  The Insurers include HDI Global Specialty SE, which is a citizen of Germany (a signatory to the Convention), and at least one member/name on a portion of the risk assumed by Underwriters is a corporation organized under the laws of and having its principal place of business in the United Kingdom of Great Britain and Ireland.[5] Thus, without question, there are parties to the Arbitration Agreement that are citizens of Contracting States other than the United States. As such, the Arbitration Agreement falls under the scope of the Convention, and pursuant to Section 206 Convention Act,[6] the Insurers are entitled to an order compelling Bufkin to submit to arbitration in accordance with the terms of the Policy.  *See Glad Tidings*, 2021 U.S. Dist. LEXIS 121625 at *5-6.

---

[4] See Ex. A, Policy, Contract Allocation Endorsement ("The following words shall be deemed synonymous: "Underwriters", "Insurers" and "Company". ); Form COMPASS 04 18. Section VIII-Policy Definitions, Par. G. at p. 33 of 42 ("Companies: The following words shall be synonymous with each other: "Underwriters", "Insurers" and "Companies". )

[5] Pursuant to the directive found in *Corefield v. Dallas Glen Hills* LP, 355 F.3d 853, 857-58 5th Cir. 2003) (citations omitted):

> Lloyd's of London is not an insurance company but rather a self-regulating entity which operates and controls an insurance market. The Lloyd's entity provides a market for the buying and selling of insurance risk among its members who collectively make up Lloyd's. Thus, a policyholder insures at Lloyd's but not with Lloyd's.
> The members or investors who collectively make up Lloyd's are called "Names" and they are the individuals and corporations who finance the insurance market and ultimately insure risks. Names are underwriters of Lloyd's insurance and they invest in a percentage of the policy risk in the hope of making return on their investment…

[6] With respect to orders to compel arbitration, Section 206 of the Convention Act provides the following:

> A court having jurisdiction under this chapter … may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States.  Such court may also appoint arbitrators in accordance with the provisions of the agreement.

**The Convention Applies to Claims Against the Domestic Insurers.**

45. By filing the Insured's Lawsuit naming only the Domestic Insurers as defendants, it would appear that Bufkin is attempting to circumvent the Convention.  But Bufkin cannot do so.  This is because *all* of the Insurers are parties to the Arbitration Agreement, which calls for a single Arbitration Tribunal to resolve "all matters in difference" between Bufkin and the Insurers.  As noted above, the Arbitration Agreement expressly defines "the parties" to the Arbitration Agreement to be "the Insured and the *Companies*"— plural. (emphasis added)  In determining whether the Convention applies, the relevant inquiry is whether at least one of the parties to the arbitration agreement itself is a citizen of a foreign signatory country.  *See* 9 U.S.C. §202; *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004).  That requirement is clearly satisfied here.

46. Indeed, in cases involving the identically worded Arbitration Agreement contained in a policy subscribed to by both domestic and foreign insurers, federal courts have compelled arbitration under the Convention with respect to claims against both the domestic insurers and foreign insurers.  *See e.g., Glad Tidings Assembly of God Church of Lake Charles v. Indian Harbor Insurance Co.,* Case No. 2:21-cv-01009, 2021 U.S. Dist. LEXIS, 121625, **3-9 (W.D. La. June 28, 2021) (granting motion to compel arbitration of contractual and extra-contractual claims in favor of both domestic and foreign insurers); *Bhandara Family Living Trust v. Underwriters at Lloyd's*, 2020 U.S. Dist. LEXIS 55385, *11-12 (S.D.

Tex. Feb. 20, 2020) (granting motion to compel arbitration in favor of both domestic and foreign insurers); *Gold Coast Prop. Mgmt. v. Certain Underwriters at Lloyd's London*, 2019 U.S. LEXIS 99997, * 3-12 (S.D. Fla. June 14, 2019) (same); *Woodward Design + Build, LLC v. Certain Underwriters at Lloyd's London*, 2020 U.S. Dist. LEXIS 178799, *11-13 (E.D. La. Sept. 29, 2020) (same); *5556 Gasmer Mgmt. LLC v. Underwriters at Lloyd's, London*, 463 F.Supp.3d 785 (S.D. Tex. May 29, 2020) (same); *Urban Meridan Group v. Certain Underwriters at Lloyd's London*, 2020 U.S. Dist. LEXIS 148952 (same); *SW LTC-Mgmt. Servs., LLC v. Lexington Ins. Co.*, 2019 U.S. Dist. LEXIS 66210 (E.D. Tex. Mar. 29, 2019) (same); *Georgetown Home Owners Ass'n, Inc. v. Certain Underwriters at Lloyd's London*, 2021 U.S. Dist. LEXIS 20042, 2021 WL 359735, at *3 (M.D. La. Feb. 2, 2021).

47. In *Glad Tidings*, this Court reached the same result in another Hurricane Laura-related insurance dispute under virtually identical circumstances. 2021 U.S. Dist. LEXIS 121625, at *2-9. *Glad Tidings* involved an identically worded Arbitration Agreement contained in a policy subscribed to by the same insurers involved here. As here, in *Glad Tidings*, the insured attempted to circumvent the Convention by filing suit against only the domestic insurers that subscribed to the risk, against which the insured asserted causes of action for breach of contract and statutory bad faith. *Id*. at *3. This Court rejected the Insured's argument that the insured's claim against the domestic insurers was not enforceable under the Convention. As Judge Cain explained in his Memorandum Order, "the arbitration

clause makes clear that all subscribing insurers are parties to that agreement. Accordingly, the domestic insurers are likewise parties to the arbitration agreement falling under the Convention and the court finds that they are equally empowered to enforce the agreement as the foreign insurers." *Id*. at *6, FN 3 (internal citations to the record omitted).  For the Court's convenience, a copy of the Court's Memorandum Order issued in *Glad Tidings* is attached hereto as Exhibit "F."

**Alternatively, The Arbitration Agreement Must Be Enforced Under the FAA.**

48. Additionally or in the alternative, the Arbitration Agreement must be enforced under the FAA.  The FAA was enacted by Congress "in response to widespread judicial hostility to arbitration" and it aims "to ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). Typically, "the FAA preempts state laws that require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478-79.  The FAA applies to arbitration agreement in contracts involving interstate commerce.  9 U.S.C. §2 ("a written provision in … a contract evidencing a transaction involving commerce to settle by arbitration … shall be valid, irrevocable, and enforceable.")

49. Without question, the Policy at issue involves interstate commerce, which the United States Supreme Court has explained expressed an intent "to exercise

Congress' commerce power to the full." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995); *Matter of Monarch Consulting, Inc. v. National Union Fire Ins. Co. of Pittsburgh*, 26 N.Y.3d 658 (Feb. 18, 2016). The FAA does not require a substantial effect on interstate commerce; rather, it requires only that commerce be involved or affected. Therefore, if some, but not all aspects of a transaction affect interstate commerce, the FAA applies. Interstate commerce is involved to satisfy the FAA where the underlying insurance policy is issued to a citizen of one state by an insurer that is a citizen of another state. Here, the Policy at issue involves interstate commerce because Bufkin is a Louisiana entity and the Insurers are all citizens of either foreign countries or states other than Louisiana. Therefore, since interstate commerce is involved related to this claim, the FAA applies.

50. The Policy contains an enforceable New York choice of law provision. In *Louisiana Generating, L.L.C. v. Illinois Union Ins. Co.*, 719 F.3d 328 (5th Cir. 2013), the Fifth Circuit enforced a New York choice of law provision in an insurance dispute by a Louisiana insured against its insurer. Similarly, New York courts will typically enforce a party's choice of law provision. *See Telenor Mobile Communications AS v. Storm, LLC*, 584 F.3d 396 (2d Cir. 2009).

51. In certain circumstances, however, the McCarran-Ferguson Act, 15 U.S.C. §1012 exempts state laws regulating insurance from FAA preemption: 1) the federal statute in question does not specifically relate to insurance; 2) the state law at issue was enacted to regulate the business of insurance and 3) the federal statute

would invalidate, impair or supersede the state law. *Matter of Monarch*, 26 N.Y.3d at * 6.

52. Bufkin cannot satisfy the last two requirements because there is no statute applicable under New York law that the FAA would invalidate, impair or supersede if it were enforced. Indeed, arbitration of insurance disputes has been enforced under New York law. *See also Nat'l Union v. Personnel Plus, Ins.*, 2013 U.S. Dist. LEXIS 102278, 14-15 (S.D.N.Y. 2013); *Bernstein v. Centaur Ins. Co.*, 606 F.Supp. 98 (S.D.N.Y. 1984) (insurance dispute arising under New York law not reverse preempted). In *Hamilton Life Ins. Co. of New York v. Republic Nat. Life Ins. Co.*, 291 F.Supp. 225 (S.D.N.Y. 1968), the court ruled there was no New York statute regulating the business of insurance that would be impaired, invalidated or superseded by application of the FAA. *Id.* at 233.

53. In sum, although the Insurers contend arbitration of all claims is proper under the Convention because all claims as to all of the Insurers "relate to" the arbitration provision involving, in part, citizens of Germany and the United Kingdom, the Insurers submit the Arbitration Agreement is otherwise enforceable under the FAA.  Pursuant to Section 4 of the FAA, the Insurers are entitled to an order directing Bufkin to submit to arbitration in accordance with the terms of the Policy. *See* 9 U.S.C. §4.

**The Broad Delegation Clause Mandates the Arbitration Panel Determine All Issues, Including the Agreement's Validity and Scope**

54. The parties have clearly and unmistakably agreed to a broad delegation clause that requires that all matters in difference in this dispute be submitted to the

arbitration panel, including gateway rulings on threshold arbitrability issues. Because the broad delegation clause is valid and binding, the Insured's challenges, including those regarding arbitrability itself, are to be submitted to the arbitration panel.

55. The Fifth Circuit has provided excellent guidance with respect to the limited nature of the judicial inquiry when such a broad delegation clause is present. In *Kubala v. Supreme Prod. Servs*., 830 F.3d 199, 202 (5th Cir. 2016), the Fifth Circuit stated:

Enforcement of an arbitration agreement involves two analytical steps. The first is contract formation—whether the parties entered into any arbitration agreement at all. The second involves contract interpretation to determine whether this claim is covered by the arbitration agreement. Ordinarily both steps are questions for the court. *Will-Drill Res., Inc. v. Samson Res. Co*., 352 F.3d 211, 214 (5th Cir. 2003). But where the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995).

Ordinarily this type of dispute involves two layers of arguments—the merits (does Kubala have a right to back pay?) and arbitrability of the merits (must Kubala bring his claim for back pay in arbitration rather than in court?). *Id.* The presence of a delegation clause adds a third: "Who should have the primary power to decide" whether the claim is arbitrable. *Id.* Delegation clauses are enforceable and transfer the court's power to decide arbitrability questions to the arbitrator. Thus, a valid delegation clause requires the court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010).

Thus, if the party seeking arbitration points to a purported delegation clause, the court's analysis is limited. It performs the first step—an analysis of contract formation—as it always does. But the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated. *Id.* If there is a delegation clause, the motion to compel arbitration should be granted in

almost all cases.

*Kubala, 830* F. 3d at 201, 202

56. Accordingly, where "a party seeking arbitration points to a purported delegation clause, the court's analysis is limited." *Kubala*, 830 F.3d at 202. The court must determine (1) whether the parties have entered into a valid agreement to arbitrate *some* set of claims; and if so, (2) whether the purported delegation clause is in fact a delegation clause. *Id.* (emphasis in original). "If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases." *Id.* Even in those narrowly defined set of circumstances where a party resists a "wholly groundless" arbitration, "the court should not *resolve* the parties' arbitrability arguments." *Id.* n.1. (emphasis in original). "Instead, it should look only to whether there is a *bona fide* dispute on arbitrability. If there is, the claim must be referred to arbitration for resolution of the arbitrability issue." *Id*. (emphasis in original).

57. The Arbitration Agreement at issue is valid. Multiple courts have had the occasion to consider this exact provision in suits by insureds against its insurer(s), and in each and every case, the respective court held that the wording required arbitration of all disputes between the parties. *See e.g., Glad Tidings*, 2021 U.S. Dist. LEXIS 121625, at **9; *St. Theresa Specialty Hosp. v. Indian Harbor Ins. Co.*, 2019 U.S. Dist. LEXIS 182461 (E.D. La. 2019) (extra-contractual claims under La.R.S. 22:1892 and 1973 subject to arbitration); *Port Cargo Serv., LLC v. Certain Underwriters at Lloyd's,* London, 2018 WL 4042874, 2018 U.S. Dist.

LEXIS 144291 (E.D. La. 2018) (extra-contractual claims under La.R.S. 22:1892 and 1973 subject to arbitration); *Georgetown Home Owners Ass'n v. Certain Underwriters at Lloyd's*, No. 20-102-JWD-SDJ, 2021 U.S. Dist. LEXIS 20042, at *38-39  (M.D. La. Feb. 2, 2021) (extra-contractual claims under La.R.S. 22:1892 and 1973 subject to arbitration); *1010 Common, LLC v. Certain Underwriters at Lloyd's, London*, No. 20-2326, 2020 U.S. Dist. LEXIS 233867, at *8, 33 (E.D. La. Dec. 14, 2020) (extra-contractual claims under La.R.S. 22:1892 and 1973 subject to arbitration); *Corpus Christi Indep. Sch. Dist. v. AMRISC, LLC*, 19-cv-301 (ARR) (JO), 2019 U.S. Dist. LEXIS 78699, at *3 (E.D.N.Y. May 9, 2019) (compelling arbitration of all claims, including extra-contractual claims, rejecting insured's various enforceability challenges, including those based on unconscionability and ambiguity); *Ytech 180 Unites Miami Beach Investments LLC v. Certain Underwriters at Lloyd's, London*, 359 F. Supp. 3d 1253, 1266 (S.D. Fla. 2019) ("the only reasonable interpretation [of the arbitration clause] is that the Parties . . . agreed to give an arbitrator exclusive authority to resolve any dispute relating to the Policy."); *Certain Underwriters at Lloyd's, London v. Vintage Grand Condo. Ass'n, Inc.*, No. 18 CIV. 10382 (CM), 2019 WL 760802, at *1, *5 (S.D.N.Y. Feb. 6, 2019) ("Under the plain terms of the Policy, any such dispute must be arbitrated. Period. End of story." and further admonishing that insured's effort to avoid arbitration "wastes this busy Court's time with [a] frivolous application").

58. Here, the arbitration provision requires that the parties arbitrate "all matters in

difference" between the parties. The Fifth Circuit has described this wording as "broad." *See Sedco v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d at 1144-45; ("it is difficult to imagine broader language than that contained in the [agreements] arbitration clause"). Likewise, all claims, including claims pursuant to La.R.S. 22:1892 and 1973, are subject to arbitration. *See Todd v. Steamship Mut. Underwriting Ass'n, Ltd.*, 601 F.3d 329 (5th Cir. 2010), on remand, 2011 WL 1226464. In sum, as the Fifth Circuit has instructed, "[w]henever the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration." *Mar-Len of Louisiana, Inc. v. Parsons-Gilbane*, 773 F.2d 633, 635 (5th Cir. 1985).

**La. R.S. 22:868 Does Not Prohibit Enforcement of the Arbitration Agreement.**

59. The Insurers anticipate that Bufkin will argue that La. R.S. 22:868 (formerly La. R.S. 22:629) prohibits enforcement of the Arbitration Agreement.  This statute states in relevant part as follows:

> **A.** No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state … shall contain any condition, stipulation, or agreement:
>
> **(1)** Requiring it to be construed according to the laws of any other state or country except as necessary to meet the requirements of the motor vehicle financial responsibility laws of such other state or country.
>
> **(2)** Depriving the courts of this state of the jurisdiction or venue of action against the insurer.
>
> …

> **D**.     The provisions of Subsection A of this Section shall
> not prohibit a forum or venue selection clause in a
> policy form that is  not subject to approval by the
> Department of Insurance.

61. For at least three reasons, this statute does not prohibit the enforcement of the Arbitration Agreement at issue here.

62. <u>First</u>, the statute is not triggered because the Policy at issue was not delivered in Louisiana or issued for delivery in Louisiana.  *See McDermott Intern., Inc. v. Lloyds Underwriters of London*, 120 F.3d 583 (5th Cir. 1997) (policy neither delivered nor issued for delivery in Louisiana).

63. The Louisiana Supreme Court has interpreted the meaning of "delivery" as it had been used in insurance contracts. In *Pruitt v. Great Southern Life Ins. Co.*, 202 La. 527, 12 So.2d 261 (1942), the Supreme Court held that whether an insurance policy has been delivered depends upon the intentions of the parties; delivery can be actual or constructive. *Id.* at 531. There are three requirements for delivery: (1) "whether the company or its agent intentionally parts with control or dominion of the policy"; (2) whether the company or its agent "places [the policy] in the control or dominion of the insured or some person acting for him"; and (3) the underlying purpose of the delivery is to make "valid and binding [a] contract of insurance." *Id.* at 531–32. In *McDermott*, the court concluded the facts suggested the policy was issued in London, meaning the statute did not apply.

64. Here, the Policy was printed and published in Houston, Texas by AmRisc, LLC, the Managing General Agency for the Insurers, and from Texas, AmRisc LLC delivered the Policy via email to the Insured's surplus lines insurance broker, AmWINS Brokerage of Florida, Inc., in Florida.  The domestic insurers were identified as being located in

various states other than Louisiana, and Underwriters and Hannover were identified as located outside the United States. Thus, Bufkin is unable to establish that La.R.S. 22:868 applies to the dispute because the Policy was neither delivered nor issued for delivery in Louisiana.

65. Second, even if the Policy were delivered or issued for delivery in Louisiana, the statute's prohibition against the inclusion of an arbitration provision does not apply to surplus lines policies such as the Policy at issue here.

66. The Louisiana legislature recently amended the statute to add subsection D., which provides that the statute "shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance." La. R.S. 22:868(D).

67. As the Fifth Circuit and US Supreme Court have noted, "arbitration clauses are deemed a 'subset of foreign forum selection clauses in general.'" *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 901 (5th Cir. 2005), quoting *Vimar Seguros y Reaseguros, S.A. v. M/V SKY REEFER*, 515 U.S. 528, 534 (1995); *see also*, *Haughton v. Plan Adm'r of Xerox Corp. Ret. Income Guarantee Plan*, 2 F.Supp.3d 928, 934 (W.D. La. 2014) ("Of course, an agreement to arbitrate is but a specialized kind of forum-selection clause that dictates not only the situs of suit but also the procedure to be used in resolving the dispute.")

68. The Policy at issue here is a surplus lines policy. *See* Ex. A, Policy, Louisiana Surplus Lines Notice, Form LA SLN 11 13 p. 3 of 3 ("**This insurance policy is delivered as surplus lines coverage under the Louisiana Insurance Code**.") As such, it is not subject to approval by the Department of Insurance. *See* La. R.S. 22:1456 (A) ("The commissioner [of Insurance] shall not require surplus lines insurers to file or seek approval

of their forms and rates for property and casualty insurance except as provided by R.S. 22:1456(B)(2) relative to public carrier vehicles.")  Thus, the statute's prohibition against the enforcement of arbitration clauses is not applicable here.

70. Third, even if the statute's prohibition against arbitration clauses were applicable, the Fifth Circuit (and this Court) have expressly rejected enforcement of the statute in the context of insurance disputes otherwise governed by the Convention.  *See Southwestern Elec. Power Co. v. Certain Underwriters at Lloyd's, London*, 2013 WL 5427888 (W.D. La. 2013), appeal dismissed on other grounds 772 F.3d 1384 (5th Cir. 2014); *Glad Tidings*, 2021 U.S. Dist. LEXIS 121625, *4-5 ("[S]tate insurance law has no impact on arbitration agreements arising under the Convention.").

71. The same result was reached by the Fifth Circuit in *Safety Nat. Cas. Corp. v. Certain Underwriters At Lloyd's, London*, 587 F.3d 714, 719 (5th Cir.2009), cert. denied, 562 U.S. 827, 131 S.Ct. 65, 178 L.Ed.2d 22 (2010), where the plaintiff argued that the McCarran-Ferguson Act, 15 U.S.C. §§1011-1115, "reverse-preempted" the Convention to prevent its application to the dispute. The Fifth Circuit rejected the argument and stated:

> We are persuaded that state law does not reverse-preempt federal law in the present case for two distinct reasons:  (1) Congress did not intend to include a treaty within the scope of an "Act of Congress" when it used those words in the McCarran-Ferguson Act, and (2) in this case, it is when we construe a treaty, specifically the Convention, rather than the Convention Act, to determine the parties' respective rights and obligations, that the state law at issue is superseded.

> *Id.* at 718.

72. Ultimately, the Fifth Circuit concluded that it was the terms of the Convention, *i.e.*, the treaty, that mandated arbitration of the dispute and proscribed the terms for determining

whether the dispute was subject to arbitration rather than the Convention Act that could be interpreted as an "Act of Congress." As such, the obligations of the treaty superseded the state statute allegedly prohibiting arbitration. *See also St. Theresa Specialty Hosp.*, 2019 U.S. Dist. LEXIS 182461 (E.D. La. 2019) (claim arising under Convention, including claims against domestic insurers subject to arbitration); *Port Cargo Serv., LLC v. Certain Underwriters at Lloyd's,* London, 2018 WL 4042874, 2018 U.S. Dist. LEXIS 144291 (E.D. La. 2018) (claim arising under Convention, including claims against domestic insurers subject to arbitration under estoppel theory); *Authement v. Ingram Barge Co.*, 878 F.Supp.2d 672 (E.D. La. 2012) (claim arising under the Convention subject to arbitration); *ESAB Group v. Zurich Ins.*, 685 F.3d 376 (4th Cir. 2012); *Antillean Marine Shipping Corp. v. Through Transport Mut. Ins., Ltd.*, 2002 WL 32075793 at *3 (S.D. Fla. 2002) ("the McCarran-Ferguson Act does not apply to international arbitration insurance contracts made under the Convention."); *Georgetown Home Owners Ass'n v. Certain Underwriters at Lloyd's*, 2021 U.S. Dist. LEXIS 20042 at *22 ("Consequently, La. Rev. Stat. § 22:868, does not reverse-preempt the Convention.")

**A Stay of this Litigation and the Second Lawsuit Pending is Mandatory.**

73. Section 3 of the FAA, which has residual application in Convention cases pursuant to 9 U.S.C. § 208, and 9 U.S.C. § 206, commands a federal district court to stay litigation if a party to the dispute demonstrates that there is an arbitration agreement in place that governs the dispute:

> If any suit . . . be brought . . . upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which said suit is pending, upon being satisfied that the issue involved in such suit or

proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had . . . .

74.    Under the express terms of the arbitration agreement at issue here, the Insurers have the contractual right to have all disputes related to the Policy resolved by arbitration. Because Bufkin has filed suit for benefits under the Policy and the Insurers have invoked the arbitration provision, the mandatory stay provision applies. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).

75.    The Insurers submit that all claims are subject to arbitration, either under the Convention or the FAA. However, to the extent some claims are subject to arbitration and others are not, a stay of all claims is appropriate pending resolution of the claims subject to arbitration. *See Acosta v. Master Maintenance & Const.*, 452 F.3d 373 (5th Cir. 2006) (claims under Louisiana Direct Action statute related to arbitration and were thus properly removed).

## PRAYER FOR RELIEF

**WHEREFORE**, based upon the foregoing, the Insurers respectfully request this Honorable Court to:

   a)  Compel Bufkin to submit to arbitration in accordance with the terms of the Policy;

   b)  Stay this Litigation and the Insured's Lawsuit pending arbitration; and

   c)  Grant any such further relief the Court deems just and appropriate.

Respectfully submitted this 26th day of November, 2021.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:   /s/ Heather S. Duplantis
        Virginia Y. Dodd, Bar Roll No. 25275
        Heather S. Duplantis, Bar Roll No. 30294
        II City Plaza | 400 Convention Street,
        Suite 1100
        Baton Rouge, Louisiana 70802-5618
        Post Office Box 4412
        Baton Rouge, Louisiana 70821-4412
        Telephone: 225-346-0285
        Telecopier: 225-381-9197
        Email:  ginger.dodd@phelps.com
                heather.duplantis@phelps.com

**ATTORNEYS FOR PETITIONERS, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. AMR-63188-02, LEXINGTON INSURANCE COMPANY, GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA, INDIAN HARBOR INSURANCE COMPANY, HDI GLOBAL SPECIALTY SE, OLD REPUBLIC UNION INSURANCE COMPANY, QBE SPECIALTY INSURANCE COMPANY, STEADFAST INSURANCE COMPANY, UNITED SPECIALTY INSURANCE COMPANY, AND SAFETY SPECIALTY INSURANCE COMPANY**

**PLEASE SERVE:**

**Bufkin Enterprises LLC**
*Through its Registered Agent of Service of Process*:
Tara Bufkin
3102 Henderson Bayou Road
Lake Charles, Louisiana 70605